SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
AT DAYTON

FILED
KENNETH J. MURPHY

00 NOV -6 PM 2:45

| | |
|---|---|
| MARSHA ORCUTT, M.D.<br>214 Thornhill Lane<br>Middletown, OH 45042-3676,<br><br>      Plaintiff,<br><br>v.<br><br>KETTERING RADIOLOGISTS, INC.<br>2600 Far Hills Avenue<br>Dayton, OH 45419<br><br>KETTERING RADIOLOGISTS<br>IMAGING CENTER, INC.<br>2600 Far Hills Avenue<br>Dayton, OH 45419<br><br>KETTERING MEDICAL CENTER<br>3535 Southern Blvd.<br>Kettering, OH 45429<br><br>Also serve Statutory Agents:<br><br>JAMES E. HAMILTON<br>Registered Agent, KRI<br>7061 Corporate Way<br>Centerville, OH 45459<br><br>      and<br><br>FRANK J. PEREZ<br>Registered Agent, KMC<br>3535 Southern Blvd.<br>Kettering, OH 45429,<br><br>      Defendants. | Case No. C 3 00- - -545<br>Judge WALTER HERBERT RICE<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**COMPLAINT WITH JURY**<br>**DEMAND ENDORSED HEREON** |

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Marsha Orcutt, M.D. is a radiologist and a former employee, director and shareholder of Defendant Kettering Radiology, Inc. ("KRI") and Kettering Radiologists Imaging Center, Inc. ("KRIC").

2. Defendant, KRI is a closely held Ohio corporation with its principal place of business in Dayton, Montgomery County, Ohio. KRI has been at all material times an employer within the meaning of Section 4112.02(A)(2) of the Ohio Revised Code.

3. Defendant KRIC is a closely held Ohio corporation with its principal place of business in Dayton, Montgomery County, Ohio.

4. Defendant Kettering Medical Center ("KMC") is a non-profit corporation, with its principal place of business in Kettering, Montgomery County, Ohio.

5. At all material times, Defendant KRI was doing business as a professional corporation in Montgomery County, Ohio.

6. At all material times, Defendant KRIC was doing business as a professional corporation in Montgomery County, Ohio.

7. At all material times, Defendant KMC was doing business as a hospital in Montgomery County, Ohio.

8. The claims alleged herein arose in Montgomery County, Ohio where venue is proper.

9. This Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question) and 31 U.S.C. §3730(h) (whistleblower provisions of the federal False Claims Act).

10. This Court has supplemental jurisdiction over the state law claims in this

Complaint pursuant to 28 U.S.C. §1367 on the grounds that her state law claims are so closely related to her federal claims that they form part of the same case or controversy.

## FACTUAL ALLEGATIONS

11. Plaintiff was originally hired by Defendant KRI on or about March 19, 1991 to perform services as a radiologist. Defendant KRI and Plaintiff entered into a written Employment Contract on or around March 19, 1991, a copy of which is attached hereto as Exhibit A. That employment contract was subsequently extended and modified by verbal agreement and was in effect as of May 19, 1999.

12. On or about June, 1994, Plaintiff became a director and shareholder of Defendant KRI and entered into a *Stock Redemption Agreement* with Defendant KRI, a copy of which is in the possession, custody and control of Defendant KRI and which, upon information and belief is similar to the document attached hereto as Exhibit B. Plaintiff remained a director and shareholder at all times relevant to the allegations in the Complaint.

13. On or about June, 1994, Plaintiff also became a director and shareholder of Defendant KRIC and Plaintiff entered into an agreement with Defendant KRIC, a copy of which is in the possession, custody and control of KRIC and/or KRI.

14. Defendant KRI was at all relevant times a party to an *Exclusive Radiology and Magnetic Resonance Service Agreement* (a copy of which is attached hereto as Exhibit C) pursuant to which Defendant KRI, and its employees, including Plaintiff, were to provide radiology services to Defendant KMC.

15. At all relevant times, Plaintiff performed the services required by the *Exclusive*

3

*Radiology and Magnetic Resonance Services Agreement* in a professional and competent manner.

16. In or about January, 1997, Defendants KRI and KRIC entered into an arrangement with the Kirkland Medical Group ("KMG"). The arrangement involved a subcontractor relationship with the Kirkland Group whereby the Kirkland Group performed radiology tests on their patients and contracted with Defendants KRI and KRIC to interpret those films on their patients.

17. Although the arrangement was characterized as an "overread" arrangement, upon information and belief, all the diagnostic radiologic tests conducted on KMG premises were sent to Defendants KRI and KRIC for interpretation. KMG would bill the Government, third party payers, and pay KRI $7.00 per interpretation. Defendants paid for a crew to pick up the films and deliver them to Defendant KRI.

18. Besides referring diagnostic x-ray cases to Defendant KRI under the subcontractor arrangement, KMG also referred procedures such as CT and ultrasound to KRI for the performance of more expensive tests and interpretations.

19. KRI's agreement with KMG to interpret films off the premises is a violation of Medicare rules in that the submission of charge documents reflecting professional services not performed constitutes a conspiracy to commit billing fraud.

20. On several occasions, Plaintiff expressed her concerns regarding not only quality problems with the films, but also concerns regarding the legality of the arrangement under Medicare reimbursement laws.

21. In May of 1998, Plaintiff attended an Ohio State Radiology Society meeting

along with another member of the group. At that meeting, a speaker from the American College of Radiology (ACR) discussed the fraud and abuse implications of these transactions.

22. Between June and July, 1998, Plaintiff brought to the attention of Defendant KRI's Board of Directors her concerns regarding legal liability and potential litigation associated with the above-described transactions and the need to establish a billing compliance program as recommended by the ACR.

23. After the Board repeatedly failed to address Plaintiff's concerns, Plaintiff informed KRI that she would no longer interpret any of the KMG films. She continued to put Defendant KRI on notice of her concerns regarding its legal liability for fraud.

24. On or about March 25, 1999 at approximately 10:00 a.m., Plaintiff was at work in the reading room at Defendant KMC. Dr. Jerry Andrews approached Plaintiff and told her that he could not attend the Tumor Board Conference to discuss two gliobastoma cases even though he was a neuroradiologist and specialized in that area. When Plaintiff asked why he would not present these cases, Dr. Andrews replied that, "It is your duty, my dear. I will not cover for you." Plaintiff offered to cover for Dr. Andrews in the Radiology Department so he could present those cases but Dr. Andrews once again stated he would not cover for Plaintiff.

25. Plaintiff advised Dr. Andrews that she thought that his refusal was, under the circumstances, unprofessional. When she told him that, Dr. Andrews leaped out of the chair where he was sitting and approached Plaintiff in a threatening and intimidating manner coming within inches of her face. Dr. Andrews then yelled at Plaintiff, "you are a bitch! You are a bitch! You are a bitch!"

26. Dr. Andrews was so close to Plaintiff and yelled with such force that his spit hit

Plaintiff in her face.

27. Dr. Andrews' tirade stopped only when another physician grabbed Dr. Andrews by the arm and told him to stop.

28. On March 30, 1999, because she felt threatened, intimidated and embarrassed and because she did not want to be subjected to any further conduct of that type, Plaintiff, a member of the medical staff of Defendant KMC, filed a formal complaint of sexual harassment with the Chief Executive Office of KMC about Dr. Andrews' conduct. Plaintiff also filed a formal complaint of sexual harassment with Dr. Hewes as the President of Defendant KRIC.

29. In her complaint, Plaintiff complained, among other things, about the manner in which Dr. Andrews had conducted himself and the sexist references which he made in referring to her.

30. The March 25, 1999 incident was not the first time Dr. Andrews had made a sexist reference to Plaintiff. On another occasion, in October, 1998 after Plaintiff had strongly and forcefully stated a position she favored at a shareholders' meeting, Dr. Andrews asked if she was taking Viagra.

31. On or about April 13, 1999 Plaintiff met with Gregory R. Wise, M.D., who is Vice President of Medical Integration at Defendant KMC. Plaintiff understood that the purpose of the meeting was to discuss the complaint of sexual harassment that Plaintiff had submitted to KMC and KRI.

32. During the meeting, Plaintiff's complaint of sexual harassment was discussed briefly. However, the discussion then turned to an incident that had taken place on March 4, 1999 involving Plaintiff and an ultrasound technologist at Defendant KMC. Plaintiff was told

6

that the technologist had filed a complaint about that incident. Plaintiff had not been previously advised by Dr. Wise that incident would be discussed nor had she been informed that the incident was of concern to Defendants.

33. On or about April 14, 1999, the day after Plaintiff was informed for the first time about the March 4, 1999 incident, Defendant KMC notified Defendant KRIC that Plaintiff had violated the "rules and regulations" of KMC and the contract in effect between Defendant KMC and Defendant KRIC.

34. On or about April 22, 1999 Plaintiff was informed by Dr. Hewes that she was being placed on paid administrative leave and that she was relieved from all duties at Defendant KMC pending future action of the KRI's Board concerning her employment.

35. On or about May 19, 1999, a special meeting of the Board of Directors of Defendant KRI was held. At that meeting a divided Board voted to terminate Plaintiff's employment.

36. On or about May 20, 1999, Plaintiff received a letter from Dr. Hewes stating that if Plaintiff would resign and sign a release and waiver of all claims or if it was subsequently determined by the Board that her termination was "without cause", Defendant KRI would continue Plaintiff's salary for 120 days.

37. On May 26, 1999, Plaintiff was informed by Defendant KMC that since she was no longer an employee of Defendant KRIC her privileges at KMC were terminated.

38. Upon information and belief, prior to the special meeting of the Board of Directors, neither Dr. Hewes nor Dr. Miller nor any other member of the Board obtained a copy of the rules and regulations of KMC; they did not interview the technologist who

allegedly made a complaint about Plaintiff; and they did not investigate the circumstances that led to the filing of the complaint by the ultrasound technologist.

39. Upon information and belief, other members of the medical staff at KMC, including employees of Defendants KRI/KRIC, have had physical contact with employees at KMC, or engaged in similar conduct, and were not subject to any adverse employment action and did not have their medical privileges terminated.

## COUNT I

### (Violation of the Whistleblower Provisions of the Federal False Claims Act 31 U.S.C. §3730(h))

40. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

41. The agreement between KMG and Defendant KRI is a violation of the Medicare and Medicaid Fraud and Abuse Anti-Kickback Statute, 42 U.S.C. §1320a-7 and is a violation of the Federal False Claims Act, 31 U.S.C. §3729, et seq.

42. Plaintiff at all times acted lawfully and in a good faith attempt to rectify business practices which violated the Federal False Claims Act.

43. As a result of Plaintiff's investigation into Defendant KRI's practices and her complaints regarding the legality of this arrangement, including her refusal to interpret any of the KMG films, Defendant KRI unlawfully terminated Plaintiff's employment in violation of the Federal False Claims Act.

44. As a direct and foreseeable result of Defendant KRI's retaliatory firing of Plaintiff for her investigation and complaints concerning Defendant's illegal business practices, Plaintiff has been deprived of significant income, commissions, health insurance and other

valuable benefits due her, has had her reputation damaged, and has and continues to suffer economic harm.

45.  Defendant KRI must, pursuant to 31 U.S.C. §3730(h), make Plaintiff whole in connection with the economic losses sustained by her as a result of its retaliatory firing of her, including double the amount of back payments of salary, commissions and other benefits owed, damages for the harm to her reputation, and such other damages which are just and proper.

46.  Defendant KRIC is jointly and severally liable for the conduct of Defendant KRI.

## COUNT II

### (Opposition/Retaliation - O.R.C. Ch. 4112)

47.  Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

48.  By discriminating against and terminating Plaintiff because she had opposed what she believed in good faith to be harassment in employment at Defendant KRI, Defendant KRI violated §4112.02(A) of the Ohio Revised Code and are subject to civil liability under §4112.99 of the Ohio Revised Code.

49.  Defendant KRIC is jointly and severally liable for the conduct of Defendant KRI.

## COUNT III

### (Opposition/Retaliation - Public Policy)

50.  Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

51.  The clear policy of the State of Ohio prohibits employers from discriminating and retaliating against employees who oppose in good faith what they believe to be

9

discriminatory employment practices of their employers.

52. The termination of Plaintiff jeopardizes this public policy.

53. Defendant KRI discharged Plaintiff in violation of this public policy and as a direct result Plaintiff has been damaged for which she is entitled to recovery.

54. Defendant KRIC is jointly and severally liable for the conduct of Defendant KRI.

## COUNT IV

### (Sex Discrimination - Section 4112.99)

55. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

56. By discriminating against, retaliating against, and terminating Plaintiff because of her sex, Defendant KRI has violated §4112.02(A) of the Ohio Revised Code and is subject to civil liability under §4112.99 of the Ohio Revised Code.

57. Defendant KRIC is jointly and severally liable for the conduct of Defendant KRI.

## COUNT V

### (Sex Discrimination - Public Policy)

58. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

59. The clear public policy of the State of Ohio prohibits employers from allowing their employees to be sexually harassed and from being discriminated against and terminating their employees because of their sex.

60. The conduct alleged herein jeopardizes this public policy.

61. By its conduct alleged herein, Defendant KRI has violated this public policy and

10

as a direct result Plaintiff has been damaged for which she is entitled to recovery.

62. Defendant KRIC is jointly and severally liable for the conduct of Defendant KRI.

## COUNT VI

### (Religious Discrimination - O.R.C. Ch. 4112)

63. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

64. By discriminating against, retaliating against, and terminating Plaintiff because of her religion, Defendant KRI has violated §4112.02(A) of the Ohio Revised Code and are subject to civil liability under §4112.99 of the Ohio Revised Code.

65. Defendant KRIC is jointly and severally liable for the conduct of Defendant KRI.

## COUNT VII

### (Religious Discrimination - Public Policy)

66. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

67. The clear policy of the State of Ohio prohibits employers from allowing their employees to be discriminated and retaliated against and terminated because of their religion.

68. The conduct alleged herein jeopardizes this public policy.

69. By its conduct alleged herein, Defendant KRI has violated this public policy and as a direct result Plaintiff has been damaged for which she is entitled to recovery.

70. Defendant KRIC is jointly and severally liable for the conduct of Defendant KRI.

11

## COUNT VIII

### (Breach of Contract)

71. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

72. Defendant KRI terminated Plaintiff's employment unfairly and without good and proper cause in violation of the terms of the Employment Agreement.

73. Defendant KRI's actions constituted a breach of the express terms of Plaintiff's Agreement and a malicious breach of said contract warranting an award of punitive damages.

74. Defendant KRIC is jointly and severally liable for the conduct of Defendant KRI.

## COUNT IX

### (Promissory Estoppel)

75. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

76. During her employment and to her detriment, Plaintiff reasonably relied upon Defendant KRI's promises that she would be treated fairly, would not be discriminated or retaliated against, and would not be terminated without just cause.

77. Defendant KRI broke its promises and representations to Plaintiff by treating her unfairly, retaliating against her, and terminating her employment unfairly and without just cause.

78. As a direct and proximate result of Defendant KRI's breach of their promises, Plaintiff suffered injury and damage for which she is entitled to compensation.

79. Defendant KRIC is jointly and severally liable for the conduct of Defendant KRI.

## COUNT X

### (Breach of Implied Contract)

80. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

81. During her employment and to her detriment, Plaintiff reasonably relied upon Defendants' representations that she would be treated fairly, not discriminated and retaliated against, and not be terminated without just cause.

82. Defendants breached this implied contract and the promises and representations made to Plaintiff by treating her unfairly, retaliating against her, and terminating her employment.

83. As a result of this breach, Plaintiff suffered injuries and damages for which she is entitled to compensation and Defendants' actions constituted a malicious breach of said contract warranting an award of punitive damages.

84. Defendant KRIC is jointly and severally liable for the conduct of Defendant KRI.

## COUNT XI

### (Tortious Interference With Contract)

85. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

86. Plaintiff and Defendant KRI had a contract for Plaintiff's employment with Defendant KRI.

87. Defendant KMC was aware of the existence of this contract.

88. On or about April 14, 1999, Defendant KMC wrongfully attempted to procure the breach of Plaintiff's employment contract with Defendant KRI. Defendant KMC lacked a

13

justifiable reason for doing so.

89. Defendant KMC's efforts to interfere with Plaintiff's contract of employment with Defendant KRI resulted in the termination of Plaintiff's employment.

90. As a direct and consequential result of Defendant KMC's intentional procurement of the contract's breach Plaintiff has suffered damages and is entitled to recovery.

## COUNT XII

### (Intentional Infliction of Emotional Distress)

91. Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

92. Defendants KRI, KRIC, and KMC intentionally and recklessly acted in an extreme and outrageous manner so as to cause serious emotional distress to Plaintiff.

93. The Defendants' actions proximately caused Plaintiff serious emotional distress.

94. Defendant KRIC is jointly and severally liable for the conduct of Defendant KRI.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(a) That Defendants be enjoined from further unlawful conduct as described in the Complaint;

(b) That Plaintiff be reinstated to her employment;

(c) That Plaintiff be awarded all lost pay and benefits;

(d) That Plaintiff be awarded compensatory damages;

(e) That Plaintiff be awarded liquidated damages;

(f) That Plaintiff be awarded punitive damages;

(g) That Plaintiff be awarded reasonable attorneys' fees; and

(h) That Plaintiff be awarded all other legal and equitable relief to which she may be entitled.

Respectfully submitted,

Randolph H. Freking (0009158)
George M. Reul, Jr. (0069992)
Attorneys for Plaintiff
FREKING & BETZ
215 East Ninth Street
Fifth Floor
Cincinnati, OH  45202
(513) 721-1975

## JURY DEMAND

Plaintiff hereby demands trial by jury.